Case number 18-0724 Axion RMS LTD v. Michael Desmond Good afternoon, Michael Desmond on behalf of Axion RMS Ltd. Good afternoon, Jason Hirsch on behalf of the appellee, Michael Booth. May it please the Court, no action should be dismissed with prejudice pursuant to 2-615 unless it is clearly apparent that no set of facts can be proven that would entitle the plaintiff to recovery. The trial court in this case erred in dismissing counts 1 and 2 of Axion's complaint as there was clearly a set of facts, if proven, that would have entitled Axion to relief. Additionally, the court erred by not granting Axion at least one opportunity to amend its complaint. Counts 1 and 2 of the complaint sought to enforce a post-employment restrictive covenant contained in Mr. Booth's employment agreement. The employment agreement was attached as Exhibit 1 of the complaint. Booth moved to dismiss pursuant to 2-615. Counsel, can I ask you something? If you file a verified complaint, you're bound by what's in that complaint. It's a judicial admission, isn't that right? Well, all the facts are deemed to be on a motion for a 2-615 dismissal, Judge. All the facts are deemed to be accepted as true regardless of whether it's verified or not. But we did file a verified complaint. I'm asking you about a verified complaint. We did file a verified complaint and the facts that are verified to be true by our client. Okay. Is it a judicial admission? Well, that's a problem. I'll keep it simple. Sure. Verified complaint. The car was black and it hit a fireplant. Then leave to file a noted complaint. The car was white. It did not strike the plug. Judge, for a judicial admission, it has to be deliberate, clear, unequivocal, statement of a party about a concrete fact within that party's peculiar knowledge, and that's the key here. In your example, deliberate and clear, car was black, hit a fire hydrant. Unequivocal statement by a party about a concrete fact. So in your example, that would be deemed a judicial admission. We have two allegations in this complaint that the appellee, Booth, argues are judicial admissions. One is in Paragraph 9 of the complaint that states that the agreement was adequately supported by consideration by virtue of Booth's continued employment and compensation paid during his employment. I would argue to you that that's not an unequivocal statement of fact, but rather a legal conclusion. The exhibit that's being referred to, the agreement that's being referred to, is the exhibit to the complaint, Exhibit 1, which was the employment agreement. On a 2-6-15 motion, the employment agreement has to be treated along with the facts as alleged in the complaint. If there is a conflict between the facts and the employment agreement, the employment agreement controls. Here, the employment agreement was effective January 1 of 2015. The axiom was entitled to have all reasonable inferences drawn in its favor, including any inferences drawn from the employment agreement that was attached to the complaint. Continued employment and compensation were not the only consideration that were alleged by axiom in this complaint. Additionally, I would point out that there's nothing in the pleading rules that would have required action to allege every single fact establishing the existence of consideration here. We attached Exhibit 1, the employment agreement, to the complaint. That agreement itself says and recognizes the adequacy in existence and receipt of consideration to support the restrictive covenants here. The other alleged judicial admission is in Paragraph 5 of the complaint. And that deals with the allegation that in 2014, Booth was promoted to President of Exe and IMS and was paid a salary of $500,000. Now, it has always been our position... Let me ask you, the language in Paragraph 5 in your verified complaint, and the language in the proposed amended complaint, are they the same, or is there a conflict? In the proposed amended complaint, Judge, we tried to clarify the facts, including exactly when Mr. Booth received the salary increase. And attached to the first amended complaint and attached to the proposed second amended complaint... What do you mean by clarifying? You can't state something else. If you have a verified complaint that says, using the example that Justice Harris gave you, you can't, in the proposed amended complaint, you can't change it to something else. We're simply trying to clarify when the $500,000 salary increase took effect. We attached the payroll registers to the first amended complaint. It's Exhibit 3 to the first amended complaint. Those payroll registers clearly demonstrate that Mr. Booth's salary increase took effect on January 1 of 2015, the same date as the date of the employment agreement. And that was consideration. That salary increase was consideration for the restrictive covenants, separate and apart from his continued employment. And, you know, to the extent that... I'm getting around the conflict in the language, counsel. That's what I'm asking for. Well, two points I would make, Your Honor. When you read Paragraph 5 in its entirety, Paragraph 5 says, In 2014, Booth was promoted to president of Axian and was paid a salary of $500,000. In connection with his employment, Booth and Axian LMS entered into an employment agreement. A copy of that agreement is attached as Exhibit 1. So Exhibit 1, the employment agreement, is part of that allegation. It's referred to in that paragraph. And to the extent there was a conflict between what was alleged in the complaint and what was in the employment agreement, then the employment agreement controls, the exhibit controls. And the allegation did say, was paid in 2014. We clarified that to show that the promotion and the salary increase were agreed to in November 2014 became effective on January 1, 2015. The employment agreement is signed by the parties to take effect on January 1, 2015. In connection with the First Amendment complaint, we attached the payroll registers, which clearly demonstrate that that salary increase took effect on that date. Is there anything in writing to suggest that otherwise? There's nothing other than this? No. There's nothing in writing talking about what that means, that increase in salary, and how it affects the, you know, two-year rule? No. I'm not sure if I understand it completely, Judge, but there's no other writing other than the employment agreement. Let me ask you this. Are you asking us to go from a two-year rule to the totality of circumstances test? I don't think you need to in this case. The two-year rule applies when the only consideration being offered for the restrictive covenant is continued employment. That's not this case. I know that the Fifield case, the McGinnis case, and both of those cases, I think, relied on the Brown decision. In all three of those cases, the only consideration being offered for the restrictive covenant was the continued employment of the employee. This case is different because Exeon alleged not just the employment of Mr. Booth. Mr. Booth received a salary increase. His salary went from $300,000 to $500,000, effective January 1 of 2015, the same date as the effective date of the employment agreement. He received stock in Exeon through the restructuring, and he received a promotion to president of the company. So there is more than sufficient consideration outside of his continued employment to establish or provide consideration for these restrictive covenants. And I think that's where this case is distinguishable from Fifield, McGinnis, and Brown. The other thing I would point out is that typically with respect to restrictive covenants, the court undertakes an inquiry into the adequacy of consideration. And that's because these are viewed by the courts as a type of restraint on trade, and there's an attempt to see are we supported by sufficient consideration. But if you look at that inquiry, if we look back to the Fifield case, if you look back to the McGinnis case, the Brown case, and the Prairie Rheumatology Associates case, which is another case relied upon by Booth, every one of those cases there was an evidentiary hearing. There was an inquiry into the adequacy of consideration beyond just a review of the pleadings, which is all we had here. This was a 615 motion, was it not? This was a 2-615 motion. Okay? So the court's saying there's not sufficient cause of action here. There's something's missing in your cause of action of all these. So would the court say exactly what was missing? Well, the court, where we think the court erred is the court's opinion seems to suggest that Exon relied exclusively on the continued employment of Mr. Booth as consideration for these restrictive covenants. And that is not the case. The court seems to have overlooked the fact that we allege a salary increase. We allege a promotion from vice president to president, which maybe standing alone wouldn't be enough to support it, but it is consideration here. But was that within the two-year rule? Within the two years? Well, I don't think it's a guideline two-year rule. Two years can be enough, but it can be less if there's other forms of traditional consideration that would support the restrictive covenant. Here there was. There was a salary increase. There was stock, and there was a promotion. The other cases that we talked about, Fifield, Brown, and McGinnis, the only consideration that was relied upon was the continued employment of the employee. I was talking about the court's inquiry into the adequacy of the consideration. It has to be more than just a review of the pleadings to dismiss a case on 2615 with prejudice. That's what happened here. Let me ask you, counsel, what was the reason for making the pleading a verified complaint? Because the court, from my reading of what the trial court did, that was the root of your trouble. I mean, that really caused you a lot. That's the court relied on that a great deal. I mean, the plaintiff gets to decide how he wants to frame his complaint. Was there a specific reason that you chose the vehicle of a verified complaint? Sure, Judge. That's a very good question. We were going to file a motion for a temporary restraining order and seek a preliminary injunction until we got tied up in this motion to dismiss. That was the purpose that we filed the verified complaint. We never got to that point. And when I was talking about a hearing on the adequacy of the consideration, that's where this court made a mistake. We were entitled to a hearing. If you look at McGinnis, the McGinnis decision and the determination of consideration in that case was decided after a two-day hearing on a motion for a preliminary injunction where the parties were given the opportunity for expedited discovery. We didn't get that here. This was decided on the pleading alone. If you look at Fifield, Fifield was decided on a motion for judgment on a declaratory complaint under I believe it's 2-701B, if I'm correct, which essentially is the equivalent of a motion for summary judgment. Brown and Braun, on which both of those cases rely, was decided on a summary judgment motion after the parties had an opportunity to take discovery. We never got that here. Counsel, try to convince us right now that this difference between the two complaints somehow meets the standard for not being in conflict. Sure. Judge, to the extent that you view the allegation that the $500,000 was paid in 2014, it was a mistake that we tried to correct in the First Amendment complaint and the proposed Second Amendment complaint. And we lay out in those allegations that... Like I forgot to put it in the first pleading? No, I think the way the court was reading it, the company was restructured in November of 2014. The axiom was formed. Stock was issued. Employment agreements were entered into. Mr. Booth was promoted to president. But none of that took effect until January 1 of 2015. So if you look at the First Amendment complaint and the proposed Second Amendment complaint, we allege Booth's salary was increased from $300,000 to $500,000 contemporaneous with the effective date of the Booth employment and non-compete agreement as additional compensation for execution of the employment and non-compete agreement, including its restrictive covenants. That's Paragraph 13 of the proposed Amendment complaint. The first date Booth received his increased salary was January 1 of 2015, the same date as and contemporaneous with the effective date of Booth's employment agreement. That's Paragraph 14. Attached as Exhibit 3 was a group exhibit of payroll registers for Booth showing conclusively that his pay increase took effect on January 1, 2015. That's where we were trying to clarify this. So we think that those are sufficient to lay out and establish facts which identify additional consideration, a salary increase, which support these restrictive covenants. The motion for leave to amend, at the end of the court's ruling on the initial motion to dismiss, the court dismissed the case with prejudice under 2615. We argue, judge, that there are other facts here, there's other consideration outside what we've alleged here. And the judge said, he basically invited us, he said, I'm going to leave my ruling the way it is, but if you want to come back, if you want to bring the matter back before the court, if the plaintiff thinks there's something else the court should consider, I'm going to leave it up to you. That's why we filed the motion to reconsider and the motion for leave to amend. We think that was a timely file. We think it cured, it met all the royal effectors. It cured any defect in the complaint. It's no prejudice to Mr. Booth. It was timely. We had no prior opportunity to amend. So I think it satisfies all the royal effectors. I think it was a very harsh decision on this judge. Without giving us the opportunity for an evidentiary hearing to dismiss this matter with prejudice and without giving action at least one opportunity to amend its complaint to show that it could state a set of facts that if proven would establish it was entitled to relief. Another point I'd like to make very quickly on the judicial admission, Booth knows when he got his salary increase. He knows the correct facts here. He couldn't possibly be prejudiced by an amendment to a pleading that says your salary increase was effective on January 1, 2015. He knows exactly when he got that money. He could never file an affidavit saying that he received that salary increase prior to January 1, 2015. Thank you. May it please the Court, my name is Jason Hirsch and I represent the appellee in this matter, Mr. Booth. Thank you for giving me a couple moments to highlight some key points. An illusory promise is one in which performance is optional. An at-will employee has only an illusory promise of continued employment because the employer can terminate the employee's employment at any time. So if an employer wants to tie up an at-will employee after the employment ends, the employer has to be able to allege adequate consideration either by satisfying the two-year rule, meaning that the employer can allege that the employee worked for two years following agreement to the restrictive covenant, or the employer is capable of pointing to something in the employment agreement that shows that the employee got additional consideration. So is it like shame on the employer that doesn't get a restrictive covenant signed right away? Because if you give somebody a raise, all of a sudden that's another indication that there's something else, right? No, it's not shame on the employer, but the employer writes these agreements. It happens all the time. Every day employers throw these things in front of at-will employees. The employer has the ability to write down in that agreement, hey, you're getting at-will employment, but I'm paying you. I'm giving you something for this restrictive covenant. I asked your opponent, was there something else involved here? I mean, these things didn't happen in a vacuum. They all happened the same day. So there isn't anything else, and the reason we know that is because Section 8.6 of the employment agreement, and it's probably the most critical matter here, is an integration clause. And that provision says explicitly this is the entirety of the party's agreement with respect to this subject matter. And ATSEAN wants to ignore that. It wants this court to ignore that. If the employer can't plead either option, either satisfaction of the two-year rule or some additional consideration in the employment agreement, then the employer's case has to be dismissed as it was here. Here, ATSEAN alleged in the verified complaint that the employment agreement was supported only by the illusory promise of at-will employment and the illusory promise of a salary. The fully integrated employment agreement attached to the verified complaint as Exhibit 1 further defines the consideration as those illusory promises, provides for no further consideration to Mr. Booth, provides that ATSEAN could alter Mr. Booth's compensation at any time for any reason, including the moment after he signed it, that's in Section 3, and provides that ATSEAN could immediately terminate Mr. Booth or terminate him at any other time, and that's Section 5.1. Now, isn't it possible that the statement from Paragraph 5 of ATSEAN's original verified complaint, which says, in 2014, Booth was promoted to president of ATSEAN RMS and was paid a salary of $500,000, couldn't that be read as though Booth was offered the position in 2014, but it didn't become effective until January 1st of 2015? I don't think there's any way to read that as anything other than the man was paid and promoted in 2014. The was, of course, is past tense. It's not, he's going to be paid later. Was is, is paid, was paid. You know, is would be present tense, was would be past tense. They're saying he was paid, and so I do think that that was a clear contradiction. I don't think there's any way to harmonize that with the Second Amendment complaint. In one complaint, verified allegation says he was paid, he was promoted. In another verified complaint, they say, no, he wasn't paid and he wasn't promoted in that year. Those are distinct statements. What's interesting is today ATSEAN stood up and said, maybe that was a mistake. We have an argument about this. We have a briefing about this. Mr. Booth briefed the issue of judicial admission on the request for reconsideration and for leave to amend. The only place that ATSEAN responded was in footnote one, which Judge Valderrama noted, and the only argument was these aren't inconsistent statements. We then had another argument, and Judge Valderrama tested ATSEAN to see whether this was a product, a mistake, or inadvertence to place it within the standard of something that ATSEAN could get out of. And in every instance at every turn, ATSEAN's position was, we don't see these as inconsistent. And so they never made the argument, and, in fact, they took a position that's contrary to the only way they could have tried to escape the judicial admission. So that argument was not presented in the trial court? That argument was not presented in the trial court. There's no argument in their reply in support of their motion to reconsider and leave to amend claiming that this was a mistake or inadvertence. And the transcript of the hearing with Judge Valderrama will show that Judge Valderrama said, look, the only way you can get out of this is mistake or inadvertence, and you're not saying that. You're just saying it's consistent. Lastly, with the employment agreement, again, in the most critical element of this case is that it is, Section 8.6 is an immigration clause and says this is the entirety of the Pardons Agreement with regard to the subject matter. ATSEAN also alleged that Mr. Booth only worked for one year following the employment agreement. And that he resigned in December 2015. ATSEAN cannot change the fact that Booth was employed for less than one year after the employment agreement. ATSEAN cannot change the fact that Mr. Booth's compensation and his employment were illusory because ATSEAN didn't have to perform. ATSEAN can never change the terms of the fully integrated employment agreement nor modify it so Mr. Booth is provided more than an illusory promise. This case is straightforward because we have a fully integrated employment agreement that demonstrates that Booth received nothing other than illusory promises and worked for less than one year. Because ATSEAN did not and could not, because of the employment agreement, allege any additional consideration and because Mr. Booth worked for less than one year, this case clearly falls within Fifth Field. And Fifth Field is the controlling precedent that required ATSEAN's claims to be dismissed with prejudice. Back to the integration clause. The integration clause also demonstrates that it was never the party's intention that anything else be exchanged besides the illusory promise of employment in return for Mr. Booth signing the agreement. That's the sole purpose of that type of term. So a party can't make arguments like ATSEAN does today that contradict an agreement. What ATSEAN is doing is asking this court to ignore critical matter, the integration clause, so it can tie up employees in litigation despite the terms of an employment agreement that it wrote. This is in good law and it's not good policy. If ATSEAN got its way, then at-law employees would literally have no way to know whether they're bound or not. At-law employees would have no way to understand what an employer believes is the consideration supporting an employment agreement. And at-law employees couldn't even go to a lawyer to seek counsel because if that was the state of Illinois law, the only thing the lawyer could say is, look, the employer can pull out anything when it's ready to sue. It could say, you've got both tickets, you've got World Series tickets, you've got a dinner, you've got to buy a whiskey. So who knows what this employer is going to do? That's going to place at-law employees in Illinois in a highly precarious position. What's more, it tells employers in Illinois that they can ignore the terms of their fully integrated employment agreements. And if anything's important, it's that they actually wrote the agreement, and we know the terms, and they can't turn a blind eye to them. In making this argument, ATSEAN also claims that McGinnis supports its position. It doesn't. McGinnis didn't involve a fully integrated employment agreement, and this court was not required to consider the outcome where the employer's agreement precluded it from alleging consideration beyond the four corners of the employment agreement. McGinnis is simply inapplicable. Fifth Field is a controlling law because just like Fifth Field, the only thing that was alleged or could be alleged is their illusory promise of continued employment and their illusory promise of a salary. No pleading amendment can change the plain and clear terms of the employment agreement. In other words, a pleading amendment would be pointless. It would be futile because ATSEAN simply cannot cure the defect in their verified complaint. The employment agreement just won't support it. ATSEAN makes a lot of noise here, and I do really think they are trying to change Illinois law, and I think that that was the suggestion in their prior submissions, that the totality of the circumstances attest was the appropriate test. I think that was their primary argument, but I think they said today that you actually don't need to do that. But that is the argument they're making, and requiring a totality of the circumstances argument in all circumstances and allowing an employer to rely on matters never set forth in the plain and clear innovative employment agreements they write is a poor law and poor policy. It is previously noted that if ATSEAN prevailed, then CHNOT at-law employees would be in serious trouble. This Court should decline ATSEAN's invitation to change Illinois law as there is no basis for such a ruling. On this record, ATSEAN has no basis to evade the two-year rule nor to change the outcome received in the second court. Thank you for your time and consideration with regard to this matter. For the reasons set forth by Judge Valderrama and for the reasons set forth in Mr. Booth's appellate submissions, Mr. Booth respectfully requests that this Court affirm the circuit court. Thank you. Thank you, counsel. Thank you. A brief response? I'll be very brief. There was nothing illusory about Mr. Booth's employment here. He was the president of the company. He was a shareholder. He received a substantial salary increase with his promotion, and he was the president of the company. His employment was never terminated. He resigned on his own to go work for a competitor. If you look back at the predecessor to ATSEAN, he worked there from 2010 until December 31 of 2014. I just don't understand this argument that his employment was illusory. Counsel, can you talk about the integration clause? Sure. I don't see how that helps them, Judge. They're relying on an integration clause. Well, the very agreement that they say was integrated acknowledges the existence of the receipt and sufficiency of consideration. How does that help him? The provision also refers to a consideration previously exchanged, which I think supports our argument that all these agreements, the stockholder agreement and the employment agreement, were all entered into in connection with the restructuring of ATSEAN in November of 2014. The employment agreement just became effective in January of 2015. Counsel says that we never argued mistake. We did raise the issue of mistake before Judge Baldrama at the hearing on the motion to reconsider, and I can cite you in the record at R.90-92, that's the transcript of the hearing, the judge was refusing to consider the payroll records because he viewed that as new evidence. We're here. This is not an evidentiary proceeding. We are here on a pleading chair. You raised the issue of mistake before the trial court? We raised the issue that, Judge, if you're not going to consider the payroll registers as evidence of when this salary increase took effect, then it has to be a mistake. That's where we raised it. We raised it before the trial court. Finally, that was an argument before the trial court. The issue, when we've been talking about the salary increase, the stock alone could be sufficient consideration to support this restrictive covenant, and the judge never addressed that in his room. He said ATSEAN relied solely and exclusively on continued employment. That's just not correct. And finally, ATSEAN's not asking this court to change the law here. The law is two years of continued employment can be sufficient to support a restrictive covenant, but it doesn't have to be. There can be other traditional forms of consideration, and that's the facts and circumstances test. So with that, for all the reasons discussed today and the other arguments set forth in our briefs, ATSEAN requests that this court reverse the trial court's orders dismissing counts one and two of ATSEAN's complaint with prejudice and remand this case for further proceedings. Thank you. Thank you both for your arguments, and the matter will be taken under advisement.